**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JESSICA LEIGH JOHNSON, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FEDERAL BUREAU OF INVESTIGATION, | : | No. 14-1720 |
| *Defendant*. | : | |

PRATTER, J.                                                                       AUGUST 4, 2015

## MEMORANDUM

### I.   FACTUAL BACKGROUND[1]

In October 2004, after a trial in the U.S. District Court for the Northern District of Indiana, Odell Corley was convicted of a number of crimes, including capital murder and attempted armed bank robbery, in connection with an August 2002 attempted robbery of the First State Bank of Porter, Pines Branch (the "Pines Bank") in Indiana. In December 2014, Mr. Corley was sentenced to death on the capital murder convictions and to imprisonment for the other convictions. Mr. Corley's convictions and sentences were affirmed on appeal.

In January 2010, again in the Northern District of Indiana, Mr. Corley filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentences. The § 2255 motion remains active in the U.S. District Court for the Northern District of Indiana.

Jessica Leigh Johnson is an investigator for the Federal Community Defender Office ("FCDO") in Philadelphia. The FCDO represents Mr. Corley in his post-conviction litigation in the U.S. District Court for the Northern District of Indiana. On November 30, 2011, in connection with Mr. Corley's § 2255 motion, Ms. Johnson submitted a Freedom of Information Act ("FOIA") request to the FBI Laboratory Division for any and all records concerning the

---

[1] The facts are undisputed unless expressly noted.

FBI's investigation of the attempted robbery of the Pines Bank. The FBI searched its Central Records System for responsive records and, on February 9, 2012, informed Ms. Johnson that the requested material is located in an investigative file exempt from disclosure pursuant to FOIA Exemption 7(A).[2] Ms. Johnson appealed the FBI's decision to the Department of Justice Office of Information Policy ("OIP"), which remanded Ms. Johnson's request to the FBI for further processing of the responsive records. On remand, the FBI reopened Ms. Johnson's FOIA request, and on December 6, 2012, notified Ms. Johnson that it had located approximately 5,827 pages of potentially responsive records. After Ms. Johnson committed to paying the estimated costs for the requested material, the FBI located additional responsive materials comprised of 23 electronic media items.

On May 3, 2013, the FBI informed Ms. Johnson that it had reviewed 856 pages of potentially responsive records and had decided to release 95 pages in part, with certain information exempted from disclosure pursuant to FOIA Exemptions 7(A) and 7(E).[3] The FBI stated that the material Ms. Johnson had requested was located in an investigative file exempt from disclosure pursuant to FOIA Exemption 7(A). On May 22, 2013, the FBI made its second and final release of records to Ms. Johnson. The FBI said it had reviewed 5,059 pages of potentially responsive records and had decided to release 86 pages in part, with certain information exempted from disclosure pursuant to FOIA Exemptions 7(A) and 7(E).

---

[2] Exemption 7(A) permits an agency to withhold records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A); *see infra* Part III.A.

[3] Exemption 7(E) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see infra* Part III.B.5.

On July 5, 2013, Ms. Johnson again appealed to the Justice Department's OIP, which, on September 6, 2013, affirmed the FBI's actions and found that the FBI properly withheld certain information that was protected from disclosure under FOIA Exemption 7(A).

On March 25, 2014, Ms. Johnson filed the complaint in this case. Now, Ms. Johnson and the FBI have filed cross-motions for summary judgment. The FBI cites Exemptions 3, 5, 6, 7(A), 7(D), and 7(E) as the bases for its positions, and has produced declarations by two agents familiar with the FBI's records and record-keeping practices (the "Hardy Declaration" and the "Grist Declaration") to that effect. Ms. Johnson argues that the FBI's invocation of Exemption 7(A) as a categorical exemption is inappropriate, and that the FBI has failed to connect particular documents or types of documents to particular claimed exemptions, so it cannot satisfy its burden under the FOIA.

## II.   LEGAL STANDARD

The FOIA mandates broad disclosure of government records to the public, subject to nine enumerated exemptions. *See* 5 U.S.C. § 552(b); *CIA v. Sims*, 471 U.S. 159, 166 (1985). The purpose of the FOIA is "to facilitate public access to Government documents," and its "dominant objective" is "disclosure, not secrecy." *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs*, 135 F.3d 891, 897 (3d Cir. 1998). In light of the FOIA's broad policy of disclosure, the Supreme Court has "consistently stated that FOIA exemptions are to be narrowly construed." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988). Under the FOIA, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ("[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."). The district

court reviews *de novo* the agency's use of a FOIA exemption to withhold documents. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

An agency meets its burden under the FOIA when it submits a "reasonably detailed affidavit" describing the method it used to search for responsive materials, *Roman v. Dep't of the Air Force*, 952 F. Supp. 2d 166, 173 (D.D.C. 2013), and "describing the material withheld and detailing why it fits within the claimed exemption." *McDonnell v. United States*, 4 F.3d 1227, 1241 (3d Cir. 1993); *Lame v. U.S. Dep't of Justice*, 654 F.2d 917, 928 (3d Cir. 1981) (noting that the district court "should have had an explanation by the FBI of why in each case disclosure would result in embarrassment or harassment either to the individual interviewed or to third parties"). Under Third Circuit precedent, the affidavit must "provide the 'connective tissue' between the document, the deletion, the exemption and the explanation." *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1051 (3d Cir. 1995).

It is generally insufficient for the agency to simply cite categorical codes in connection with each withheld document, and then provide a generic explanation of what the codes signify. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 223-34 (D.C. Cir. 1987) ("A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information . . . Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." (emphasis in original)). However, a detailed index summarizing the withheld documents and the reasons they fall within a FOIA exemption (known as a *Vaughn* index[4]) may be "futile" in cases where "a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th

---

[4] *See Vaughn v. Rosen*, 484 F.2d 820 (1973).

Cir. 1998) (citing *Church of Scientology v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986)). For example, an affidavit that explains with reasonable detail why a certain category of records necessarily falls within a FOIA exemption will be sufficient to justify withholding each of those records, without reference to their content. *See Church of Scientology*, 792 F.2d at 152. Thus, "[w]hile the use of the categorical method does not *per se* render a *Vaughn* index inadequate, an agency using justification codes must also include specific factual information concerning the documents withheld and correlate the claimed exemption to the withheld documents." *Davin*, 60 F.3d at 1051.[5]

### III.    DISCUSSION

#### A.    EXEMPTION 7(A)

Exemption 7(A) permits an agency to withhold records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5

---

[5] In its statement of the legal standard, the FBI relies heavily on FOIA cases involving national defense and foreign policy matters. *See, e.g.*, *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) ("[I]n conducting *de novo* review in the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." (emphasis in original) (internal quotation marks and citations omitted)); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (according substantial weight to an agency affidavit in light of the fact that "the Executive departments responsible for national defense and foreign policy matters have unique insights" into the risks posed by disclosure); *L.A. Times v. Commc'ns v. U.S. Dep't of the Army*, 442 F. Supp. 2d 880, 899-900 (C.D. Cal. 2006) ("It is equally well-established that the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview."); *but see Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004) ("[T]he agency's opinions carry no more weight than those of any other litigant in an adversarial contest before a court." (quoting *Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). However, without questioning the importance of maintaining vigilance in applying standards in the fields of national defense and foreign policy, matters of individual rights in the criminal justice context deserve and demand careful consideration. They are not necessarily cases of equivalencies. This case falls squarely into a criminal justice context rather than a national security context, so the statements of the relevant legal standard from those cited cases involving national security and foreign policy are of somewhat limited applicability.

U.S.C. § 552(b)(7)(A). "To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir. 1995) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) [hereinafter *Robbins Tire*]).

    1.  Pending or Prospective Enforcement Proceeding

  The parties dispute whether proceedings in connection with a § 2255 motion qualify as law enforcement proceedings subject to Exemption 7(A). The FBI argues that they do, and points to certain unpublished decisions from courts in the D.C. Circuit in support of its position. Those cases explained that such proceedings "necessarily involve matters directly related to [the defendant's] criminal prosecution and conviction." *King v. U.S. Dep't of Justice*, No. 08-1555, 2009 WL 2951124, at *6 (D.D.C. Sept. 9, 2009); *see also Maydak v. U.S. Dep't of Justice*, No. 97-1830 (D.D.C. Sept. 1, 1998); *Helmsley v. Dep't of Justice*, No. 90-2413 (D.D.C. Sept. 25, 1992). Thus, according to the FBI, "[t]he release of information, in the light of a potential new trial, would allow [Mr.] Corley to critically analyze documents concerning the investigation" and Mr. Corley "could use the information to his advantage by destroying evidence or harming witnesses or potential witnesses" or by creating false evidence. (FBI Br. 17-18). The FBI's argument is not limited to Mr. Corley, but also extends to "other third parties" who could interfere with a new trial. *Id.* As a result, the FBI claims that only public sources of information contained in the investigative file (e.g., newspaper articles) are unlikely to interfere with the prosecution of Mr. Corley at a new trial that would occur in the event that Mr. Corley succeeds on his motion under § 2255.

Ms. Johnson argues that a § 2255 motion should not be construed as an "enforcement proceeding."[6] Ms. Johnson stresses that such a motion is *not* an appeal, but rather "provides an avenue for convicted federal prisoners to test the lawfulness of their confinement." (Johnson Br. 10-11). According to Ms. Johnson, post-conviction remedies like those available under § 2255 "are distinct from the regular law enforcement process; indeed, they become available only after law enforcement proceedings have concluded and a conviction has become final." *Id.* Because proceedings related to a motion under § 2255 provide a vehicle for "evaluating the constitutionality of the prior proceedings," Ms. Johnson claims that they should not be viewed as enforcement proceedings under the FOIA. *Id.* In support of her position, Ms. Johnson points to cases such as *Kansi v. U.S. Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998), in which Exemption 7(A) applied because the plaintiff's case was "still on appeal" and the "potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption . . . exists at least until plaintiff's conviction is final." *See also DeMartino v. FBI*, 577 F. Supp. 2d 178, 182 (D.D.C. 2008) (noting that the FBI argued that a law enforcement proceeding had "not yet concluded in part because [the FOIA plaintiff's] criminal conviction [was] not final"). Ms. Johnson argues that because Mr. Corley's conviction is final, there is no pending or prospective enforcement proceeding in this case.

There is very little case law addressing the issue of whether collateral attacks on criminal convictions are themselves "enforcement proceedings" under the FOIA. However, logic suggests that the existence of a pending motion under § 2255 makes it reasonably foreseeable that an enforcement proceeding (i.e., a new trial) will take place, leading to the expectation that Exemption 7(A) may apply to protect materials whose release could reasonably be expected to

---

[6] Ms. Johnson argues in the alternative that the FBI failed to articulate specifically how disclosure would interfere with a prospective enforcement proceeding in this case. *See infra* Part III.A.2.

interfere with that new trial. To be sure, proceedings in connection with a § 2255 motion are not, in and of themselves, enforcement proceedings because they are not directly related to prosecuting the defendant. Nonetheless, Exemption 7(A) may apply whenever a specific enforcement proceeding is pending *or prospective*. *See, e.g.*, *Manna*, 51 F.3d at 1164 (finding that Exemption 7(A) requires, among other things, that a law enforcement proceeding be "pending or prospective"); *Robbins Tire*, 437 U.S. at 232 (noting a recorded statement in the legislative history of the FOIA that Exemption 7(A) would apply "whenever the Government's case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information"); *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 939-40 (D.C. Cir. 1970) ("[T]he District Court must determine whether the prospect of enforcement proceedings is concrete enough to bring into operation the exemption for investigatory files, and if so whether the particular documents sought by the company are nevertheless discoverable."). Where there is a pending § 2255 motion and the movant is seeking a new trial, the new trial constitutes a prospective enforcement proceeding that may implicate Exemption 7(A). Thus, even though the pending proceedings under § 2255 are collateral and deal with the constitutionality of the process used to convict and confine Mr. Corley, the possibility that the court will grant Mr. Corley's motion and the United States will be left to prosecute Mr. Corley again is sufficient for Exemption 7(A) to possibly apply.[7]

---

[7] The Court does not mean to suggest that Exemption 7(A) would necessarily bar every prisoner serving a sentence who *may* file a § 2255 motion—even a second or successive § 2255 motion—from successfully securing the disclosure of materials from the investigative file relating to his or her case. Indeed, it may be that the prospect of a new trial is insufficiently "concrete" to implicate Exemption 7(A) where a FOIA request is made and there is no § 2255 motion pending or a court of appeals must authorize the FOIA plaintiff to file his or her § 2255 motion. *See* 28 U.S.C. § 2255(h). In any event, Mr. Corley's § 2255 motion is currently pending, so those situations are not presently before the Court.

2.      Reasonable Expectation of Articulable Harm

Assuming that the possibility of a new trial could implicate Exemption 7(A), the parties dispute whether the FBI has presented sufficient evidence that "release of the [withheld] information could reasonably be expected to cause some articulable harm." *Manna*, 51 F.3d at 1164. The Hardy Declaration claims that the release of information would allow for (a) the "identification of individuals, sources of information, witnesses, potential witnesses who possess information relative to the investigation, FBI/other law enforcement personnel, i.e., local, state and federal, and individuals otherwise associated with the investigation who could then be targeted for potential intimidation and/or physical harm," (b) the improper use of information "to counteract evidence developed by investigators, alter or destroy potential evidence and/or create false evidence," and (c) the improper use of information "to uncover the government's legal strategy." (Hardy Decl. ¶ 42). The FBI argues that Exemption 7(A) "can be asserted categorically" and that the Hardy Declaration does so adequately by describing the types of documents in the withheld investigative file and claiming that the release of each type of file could result in the above-stated harms. (FBI Reply Br. 5). Therefore, argues the FBI, it is reasonable to expect that the articulated harms will occur if the information in the investigative file is released. Moreover, the FBI claims that a *Vaughn* index would be "futile" in this case because the "claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains." *Solar Sources, Inc.*, 142 F.3d at 1039 (citing *Church of Scientology*, 792 F.2d at 152).

Ms. Johnson argues that the FBI presents "a generic and purely speculative parade of horribles that has no basis in fact" because the FBI has "no factual or record support for any actions attributable to Mr. Corley's [sic] justifying such unfounded speculation." (Johnson Br.

12). Ms. Johnson argues that the FBI's reference to risks associated with the release of "any pending investigative files" and unnamed third parties who may interfere with enforcement proceedings are "generic and speculative concerns." *Id.* at 13.[8] Also, Ms. Johnson argues that Exemption 7(A) cannot be used to withhold requested materials that were used as evidence during Mr. Corley's trial because, in light of the possible harms articulated by the FBI, "[w]hatever materials were available to Mr. Corley at trial through the extensive discovery process cannot now be shielded by application of Exemption 7(A) when Mr. Corley is already well aware of this information." *Id.* at 13-14.[9]

The Court is not persuaded by Ms. Johnson's argument that the grounds articulated for the application of Exemption 7(A) are insufficient because there are no facts to suggest that Mr. Corley would actually use the withheld information improperly. In *Robbins Tire*, the target of an unfair labor practice complaint filed by the National Labor Relations Board requested under the FOIA that the NLRB make available prior to the hearing copies of all potential witness's statements collected during its investigation. *See* 437 U.S. at 216. The NLRB refused to disclose

---

[8] Ms. Johnson argues that *Kansi*, *see supra* p. 7, stands for the proposition that the "potential for interference with witnesses and highly sensitive evidence" dissipates after a defendant's conviction becomes final. (*See* Johnson Br. 13 (quoting *Kansi*, 11 F. Supp. 2d at 44)). However, this stretches the language of *Kansi* too far. In *Kansi*, the U.S. District Court for the District of Columbia explained that the potential for interference "exists *at least* until plaintiff's conviction is final." *Kansi*, 11 F. Supp. 2d at 44 (emphasis added). It does not say that such potential *ceases to exist* once the conviction is final, and cannot be read to even suggest as much.

[9] Ms. Johnson argues that the Supreme Court's decision in *Robbins Tire* suggests that Exemption 7(A) cannot "endlessly protect material simply because it was in an investigatory file." *Robbins Tire*, 437 U.S. at 230. The Court agrees that the Supreme Court held as much, but disagrees with the implication that denying Ms. Johnson's request in light of Mr. Corley's motion under § 2255 and his impending execution means that the records will be subject to endless protection. It may be cynical to say it, but the records could be obtained after Mr. Corley's execution. The point is that so long as there is a specific prospect of an enforcement proceeding, such as a new trial, the reasons underlying Exemption 7(A) are compelling and the exemption is not being applied simply to protect investigative materials *qua* investigative materials.

those statements pursuant to FOIA Exemption 7(A). *See id.* The court of appeals ruled against the NLRB and held that Exemption 7(A) could only be applied on a case-by-case basis, and that the NLRB would only be entitled to withhold the witness statements if it could prove that a particular harm was likely to occur in a particular case. *Id.* at 236. The Supreme Court reversed, holding that Exemption 7(A) need not be applied on a case-by-case basis and expressly rejecting the lower court's conclusion that Exemption 7(A) could not apply in the absence of evidence that the FOIA plaintiff would take actions that would result in any of the articulated harms expected to result from disclosure. *See id.* at 236 (finding error in the court of appeals' conclusion that "no generic determinations of likely interference can ever be made"). Here, as in *Robbins Tire*, there is no specific evidence that Mr. Corley or any specific third party is at all likely to commit any of the bad acts conjured up by the FBI, but the disclosure of previously undisclosed information could nevertheless reasonably lead to interference with enforcement proceedings.

However, at the same time, the Court finds that the FBI has not adequately asserted Exemption 7(A) categorically in this case. The Hardy and Grist Declarations do not provide a sufficiently detailed explanation from which the Court can find that the FBI has met its burden under the FOIA. In *Robbins Tire*, the Supreme Court held that generic determinations are permissible under Exemption 7(A) because "Congress did not intend to prevent the federal courts from determining that, with respect to *particular kinds* of enforcement proceedings, disclosure of *particular kinds* of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Id.* at 236 (emphasis added). In this case, the FBI has identified 27 categories of documents that are responsive to Ms. Johnson's FOIA request and three types of harm that may result from their release. (*See* Hardy Decl. ¶¶ 39-42). Ordinarily, this could suffice to satisfy the demands of Exemption 7(A). However, each of the articulated

types of harm is contingent upon the assumption that the information is not already public. For example, the first category of documents is "Interview Forms (FD-302s) and (FD-302As)." The Hardy Declaration expressly notes that such information "may later be used as evidence . . . at trial." (Hardy Decl. ¶ 39(a)). But if such information has, *in fact*, been used at trial, then its disclosure at this stage of the litigation can hardly be said to interfere with prospective enforcement proceedings on the grounds articulated by the FBI. The only grounds on which the FBI could withhold such documents would be if they have never been released, and their release could reasonably be expected to interfere with prospective enforcement proceedings.

Although neither party cites to it explicitly, this case appears to turn on the application of the public-domain doctrine. "Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). "[T]he logic of FOIA postulates that an exemption can serve no purpose once information—including sensitive law-enforcement intelligence—becomes public, [but] we must be confident that the information sought is truly public and that the requester receive no more than what is publicly available before we find a waiver." *Id.* at 555. Therefore, in order for the public domain exception to apply, "the party advocating disclosure bears the initial burden of production; for were it otherwise, the government would face the daunting task of proving a negative: that requested information had not been previously disclosed." *Id.* at 554. Thus, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992).

Here, Ms. Johnson has met her initial burden by pointing to the evidence that was introduced at Mr. Corley's trial. "[T]he general rule [is] that a trial is a public event, and what transpires in the court room is public property." *In re Nat'l Broadcasting Co.*, 653 F.2d 609, 614 (D.C. Cir. 1981). The evidence introduced at Mr. Corley's trial constitutes a specific set of materials, likely present in the investigative file at issue, which was placed in the public record. Ms. Johnson claims that some of the withheld materials were made public at Mr. Corley's criminal trial, but the FBI has failed to identify which documents (or categories of documents) were or were not introduced as evidence in that trial. In light of the fact that the United States has already presented its case once before, and some of the materials in the investigative file (including the identities of witnesses and the investigative tactics used by government agents) are claimed to be matters of public record, it cannot be that their release could reasonably be expected to result in any of the harms articulated by the FBI.

The applicability of Exemption 7(A) therefore depends on "the subject matter which each individual record contains," rather than "upon the category of records," *Church of Scientology*, 792 F.2d at 152, and the Court finds that a *Vaughn* index (or at least a substantively more detailed or more specific affidavit) is required to show that the investigative file does not contain segregable portions that could be disclosed without risk of interfering with Mr. Corley's trial. In contrast to the categorical assertion of Exemption 7(A) in *Robbins Tire*, where the plaintiff sought advance access to witness statements that were not matters of public record, at least some of the materials in this case are being withheld to protect the identities of witnesses *whose identities may already be matters of public record*. Moreover, pursuant to the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Jencks v. United States*, 353 U.S. 657 (1957), it is likely that numerous pieces of the file have been released to Mr. Corley as part

of discovery and may have been used at trial. Such information likely having been disclosed and made part of the public record, it is impossible to see how its disclosure by way of a FOIA request would have any different effect than did its earlier disclosure during litigation.

If Ms. Johnson were making this FOIA request before Mr. Corley's original trial, it may be that the risks of releasing any documents likely include interference with a prospective enforcement proceeding. However, without a detailed description of the materials that are in the investigative file, especially a detailed description of which materials were made part of the public record at trial or produced in discovery, the Court is in no position to find that any of the materials in the investigative file risk interfering with Mr. Corley's possible second trial. Consequently, the Court cannot grant the FBI's motion for summary judgment under Exemption 7(A) at this time and on this record.

The Court is left to decide between granting Ms. Johnson's motion for summary judgment on the grounds that the FBI failed to meet its burden, and ordering that the FBI present a more detailed affidavit or index noting which documents are matters of public record. As explained above, a *Vaughn* index is not necessarily futile, and the categories of materials referenced in the Hardy and Grist Declarations are far from adequate to give the Court grounds to find that Exemption 7(A) applies to all withheld materials.

Rather than grant summary judgment for Ms. Johnson, or speculate about the materials in the investigative file or the extent to which they were entered into the public record at Mr. Corley's trial, the Court will order the FBI to supplement its filings and address, with more particularity, (1) the specific materials and information in the investigative file, (2) whether or not specific materials or information became matters of public record at Mr. Corley's trial, and (3) the connection between the specific materials and information in the investigative file and the

specific exemptions upon which the FBI is relying. *See, e.g.*, *Scicacca v. FBI*, 23 F. Supp. 3d 17, 22-23, 30-32 (D.D.C. 2014) (permitting the FBI to renew its motion for summary judgment after providing "supplemental declarations, or a *Vaughn* index" so as to "explain what types of documents [the redacted] pages belong to, who created the documents and for what purpose, and how the exemptions relate to the nature of the documents themselves"); *Voinche v. FBI*, 46 F. Supp. 2d 26, 34 (D.D.C. 1999) (holding that without a *Vaughn* index or similar explanatory document, "the Court cannot evaluate whether summary judgment is warranted . . . and therefore will permit the FBI to supplement its declaration to elucidate further the application of Exemption 7(C) to the withheld materials"); *Diamond v. FBI*, 487 F. Supp. 774 (S.D.N.Y. 1979) (denying plaintiff's request for *in camera* review of withheld documents while allowing defendant to provide a "detailed index of and justification for redacted and withheld materials"); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221 (D.D.C. 2013) (denying defendant's motion for summary judgment and ordering defendant to either produce the contested record or "submit revised documentation that is sufficiently detailed and comprehensive to meet the evidentiary standards").

      B.     EXEMPTIONS 3, 5, 6, 7(C), 7(D), & 7(E)

The FBI cites to several other FOIA exemptions as grounds for redacting or otherwise not disclosing certain documents, but the FBI has not identified the withheld information with sufficient detail such that the Court may know which documents were made part of the public record at Mr. Corley's trial and which were not, and if not, why not. Therefore, the Court will deny the FBI's motion for summary judgment as to the other FOIA exemptions, without prejudice to the Bureau to file another such motion after identifying with greater specificity (a) the materials found in the investigative file and the grounds for withholding each particular

document, and (b) which documents were made part of the record at Mr. Corley's trial. The Court acknowledges that the FBI may contend that it has given adequate explanation for claiming the protection of various exemptions. However, in order to assist the FBI in supplementing its explanations, the Court briefly addresses why the FBI's explanations with respect to each of the remaining FOIA exemptions were insufficient.

               1.        Exemption 3

Exemption 3 exempts from disclosure information that is "specifically exempted from discovery by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The FBI argues that Exemption 3 applies with respect to (1) grand jury information because of Federal Rule of Criminal Procedure 6(e), which establishes guidelines for maintaining the secrecy of proceedings before a federal grand jury, (2) information concerning court-ordered interceptions and recordings of telephone and vocal communications under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, which exempts from disclosure many of the details regarding intercepts obtained pursuant to court order, and (3) pen register information specifically exempted pursuant to the Pen Register Act, 18 U.S.C. § 3123(d).

Although each of these statutes could provide grounds on which the FBI could assert Exemption 3, the FBI provides no detail as to which documents were withheld on these grounds. Thus, for example, the Hardy Declaration simply states that the investigative file contains certain information that is exempt from disclosure under one of the above-mentioned statutes, and that the FBI has withheld that information. But such a description fails to provide the necessary

"connective tissue" demonstrating which particular documents fall within the scope of Exemption 3. From the Hardy Declaration, the Court cannot tell if it is appropriate to withhold none, some, or all of the responsive documents under Exemption 3. In addition, the Court cannot know which portions of the investigative file were already made part of the public record at Mr. Corley's criminal trial, and therefore cannot be withheld. Without more than the assurances of the Hardy Declaration, the FBI cannot meet its burden with respect to Exemption 3.

2.      Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Known as the "deliberative process privilege," the purpose of Exemption 5 is to prevent injury to the quality of agency decisions. Information may be withheld under Exemption 5 only if it is both "predecisional" and "deliberative," meaning it precedes the decision or policy to which it relates and played a direct part in the decision-making process because it consists of recommendations or opinions on legal or policy matters, or reflects the give-and-take of the consultative process. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007) (citing *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)).

The Hardy Declaration states, "[t]he material was prepared in association with the FBI's formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions, or recommendations in the investigation at issue." (Hardy Decl. ¶ 56). This is vague, general, and patently conclusory language that gives the Court no sense of which documents or categories of documents were withheld under Exemption 5, and whether or not the material in those documents actually falls within the scope of Exemption 5 or was ever

17

introduced as evidence at Mr. Corley's trial. Consequently, the FBI has not met its burden with respect to Exemption 5.

### 3.   Exemptions 6 and 7(C)

The FBI next cites Exemptions 6 and 7(C). Exemption 6 exempts from disclosure "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).[10]

The FBI claims to have withheld 9 types of information under these Exemptions: (1) names and identifying information of FBI Special Agents and support personnel; (2) names and identifying information of third parties who provided information to the FBI; (3) names and identifying information of third parties merely mentioned in the criminal investigative file; (4) names and identifying information of third parties of investigative interest; (5) names and identifying information of non-FBI federal government personnel; (6) names and identifying information of local law enforcement personnel; (7) names and identifying information of third parties with a criminal record; (8) names and identifying information of third party victims; and (9) names and identifying information of commercial and financial institution personnel.

The FBI is correct that the release of such information risks the unwarranted invasion of personal privacy, but the Court remains at a loss as to which documents or categories of

---

[10] Although these exemptions contain an important distinction—Exemption 6 applies if releasing the withheld information *would* invade someone's personal privacy, whereas Exemption 7(C) applies if releasing the withheld information *could* reasonably be expected to invade someone's personal privacy—the analysis is sufficiently similar to address them together.

documents were withheld because they actually contain such information. Moreover, to the extent such information may already be in the public domain by virtue of its revelation at trial, it cannot be withheld because its release would create no additional risk. Without more information as to the particular materials or information being withheld and the extent to which those materials or information were already made public at trial, the Court has no way of evaluating the FBI's decision to withhold them.

4.      Exemption 7(D)

Exemption 7(D) protects "records or information compiled for law enforcement purposes" but only to the extent that disclosure "could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

The FBI cites four types of information that were withheld under Exemption 7(D): (1) confidential source symbol numbers; (2) confidential source file numbers; (3) names and identifying information about, and information provided by, a source under express assurances of confidentiality; and (4) names and identifying information provided by individuals under an implied assurance of confidentiality.

Again, the FBI is correct that the release of such information may risk disclosing the identity of a confidential source, but the Court remains at a loss as to which documents or categories of documents contain such information. Moreover, to the extent such information may already be in the public domain because the names and identifying information of various

witnesses or individuals involved in the investigation and prosecution of Mr. Corley were

revealed at trial, it cannot be withheld because its release would create no additional risk.

Without more information as to the particular materials or information being withheld and the

extent to which those materials or information were already made public at trial, the Court has no

way of evaluating the FBI's decision to withhold them.

5.     Exemption 7(E)

Finally, the FBI points to Exemption 7(E) as a basis for withholding documents.

Exemption 7(E) exempts "records or information compiled for law enforcement purposes, but

only to the extent that the production of such law enforcement records or information . . . would

disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could

reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The FBI cites 10 types of information that it withheld under Exemption 7(E): (1) database

information and printouts; (2) tactical information contained in operational plans; (3) statistical

information contained in effectiveness rating forms pertaining to the investigation of the First

Pines Bank; (4) information regarding targets, dates, and scope of surveillance; (5) collection and

analysis of information; (6) information related to undercover operations; (7) information related

to polygraphs; (8) monetary payments for investigative techniques; (9) computer analysis

response team reports and data; and (10) internal FBI secure fax number, email address, and web

address.

Again, the FBI is correct that the release of such information may risk disclosing law

enforcement techniques, but the Court remains at a loss as to which documents or categories of

documents contain such information. Moreover, to the extent such information may already be in

20

the public domain by virtue of the revelation at trial of various investigative techniques used to capture and prosecute Mr. Corley, it cannot be withheld because its release would create no additional risk. Without more information as to the particular materials or information being withheld and the extent to which those materials or information were already made public at trial, the Court has no way of evaluating the FBI's decision to withhold them.

## IV.   CONCLUSION

The Court finds that the Hardy and Grist Declarations, while on the surface appearing to be rather forthcoming, actually contain insufficient detail to justify judicially validating the FBI's decision to withhold information under Exemptions 3, 5, 6, 7(A), 7(C), 7(D), and 7(E). The Declarations do not connect FOIA exemptions to the particular documents claimed to be exempt from disclosure. "Obviously, a court faced only with an agency's claim that the documents are exempt cannot carry out meaningful de novo review, and the requester's inability to challenge the agency's position 'seriously distorts the traditional adversary nature of our legal system's form of dispute resolution.'" *Hinton v. Dep't of Justice*, 844 F.2d 126, 128 (3d Cir. 1988) (quoting *Vaughn*, 484 F.2d at 824).

Although Exemption 7(A) may be applied categorically, the FBI has not yet proven that it may be applied categorically to the materials at issue in this case. Here, in light of the fact that Mr. Corley has already stood trial based on evidence likely contained in the FBI's files, Exemption 7(A) is not available to bar the production of all non-public-source material. Rather, the FBI should justify the applicability of Exemption 7(A) (and/or any other claimed FOIA exemption) to each document that it intends to withhold by demonstrating that the protectable information in the document is not already part of the public domain by virtue of use at Mr.

Corley's trial.[11] To that end, the Court will deny the cross-motions for summary judgment without prejudice, and order the FBI to either release the responsive materials to Ms. Johnson or provide the Court with supplemental affidavits or declarations justifying its decision to withhold responsive materials. *See Voinche*, 46 F. Supp. 2d at 31.[12]

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[11] The FBI must justify its decision with respect to each document that it desires to withhold because "[i]f the morass of material is so great that court review becomes impossible, there is a possibility that an agency could simply point to selected, clearly exempt portions, ignore disclosable sections, and persuade the court that the entire mass is exempt." *Hinton*, 844 F.2d at 129 (quoting *Vaughn*, 484 F.2d at 826). Indeed, in this case, the FBI went one step further: it summarized the types of records contained in the morass, simply asserted that they contain information that is exempt from disclosure, and asked the Court to believe that *all* non-public-source information is exempt.

[12] If necessary, the affidavits or declarations (or portions of them) may be filed under seal with notice to Ms. Johnson that such a filing has been made. If only portions need be under seal, a redacted version shall be provided to Ms. Johnson and filed on the public record.