**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JESSICA LEIGH JOHNSON,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FEDERAL BUREAU OF INVESTIGATION,** | : | **No. 14-1720** |
| *Defendant*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                    MAY 12, 2016

## I.    INTRODUCTION

Jessica Leigh Johnson invokes the Freedom of Information Act ("FOIA") to request materials from the files of the  Federal Bureau of Investigation ("FBI") that relate to a prior criminal investigation.  Ms. Johnson and the FBI have filed renewed motions for summary judgment, the Court having previously denied each parties' motion for summary judgment without prejudice.  For the reasons discussed below, the Court will grant Ms. Johnson's motion (with certain limitations) and deny the FBI's motion.  Specifically, the Court will order that disclosure of the requested documents shall be made only to Ms. Johnson's counsel.  Ms. Johnson's counsel will then have the opportunity to provide the Court with a schedule of the documents counsel proposes to be disclosed to others.  The FBI will have the opportunity to make specific objections to the proposed additional disclosure.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In October 2004, after a federal trial in the Northern District of Indiana, Odell Corley was convicted of a number of crimes, including capital murder and attempted armed bank robbery, in

---

[1] The facts are undisputed unless expressly noted.

1

connection with an August 2002 attempted robbery of the First State Bank of Porter, Pines Branch (the "Pines Bank") in Indiana.  In December 2014, Mr. Corley was sentenced to death on the capital murder convictions and to imprisonment for the other convictions.  Mr. Corley's convictions and sentences were affirmed on appeal.

In January 2010, again in the Northern District of Indiana, Mr. Corley filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentences.  The § 2255 motion remains active.

Ms. Johnson is an investigator for the Federal Community Defender Office in Philadelphia.  That office represents Mr. Corley in his post-conviction litigation in Indiana.  In connection with Mr. Corley's § 2255 motion, Ms. Johnson submitted a FOIA request to the FBI Laboratory Division for "any and all records" concerning the FBI's investigation of the attempted robbery of the Pines Bank.  The FBI searched its Central Records System for responsive records and informed Ms. Johnson that the requested material is located in an investigative file exempt from disclosure pursuant to FOIA Exemption 7(A).[2]  Ms. Johnson appealed the FBI's decision to the Department of Justice Office of Information Policy, which remanded Ms. Johnson's request to the FBI for further processing of the responsive records.  As a result, the FBI reopened Ms. Johnson's FOIA request and notified her that it had located approximately 5,827 pages of potentially responsive records.  After Ms. Johnson committed to paying the estimated costs for the requested material, the FBI located additional responsive materials comprised of 23 electronic media items.

---

[2] Exemption 7(A) permits an agency to withhold records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

The FBI informed Ms. Johnson that it had reviewed 856 pages of potentially responsive records and had decided to release 95 pages in part, with certain information exempted from disclosure pursuant to FOIA Exemptions 7(A) and 7(E).[3]  The FBI stated that the material Ms. Johnson had requested was located in an investigative file exempt from disclosure pursuant to FOIA Exemption 7(A).  The FBI then made its second and final release of records to Ms. Johnson.  The FBI said it had reviewed 5,059 pages of potentially responsive records and had decided to release 86 pages in part, with certain information exempted from disclosure pursuant to FOIA Exemptions 7(A) and 7(E).

Ms. Johnson again appealed to the Office of Information Policy, which affirmed the FBI's actions and found that the FBI properly withheld certain information that was protected from disclosure under FOIA Exemption 7(A).

Ms. Johnson then filed the complaint here.  Thereafter, the parties filed cross-motions for summary judgment.  The FBI cited Exemptions 3, 5, 6, 7(A), 7(D), and 7(E) as the bases for its positions, and produced declarations by two agents familiar with the FBI's records and record-keeping practices (the "Hardy Declaration" and the "Grist Declaration") to that effect.  Ms. Johnson argued that the FBI's invocation of Exemption 7(A) as a categorical exemption was inappropriate, and that the FBI failed to connect particular documents or types of documents to the other, particular claimed exemptions, so it could not satisfy its burden under the FOIA.

The Court denied both motions for summary judgment without prejudice.  *See Johnson v. F.B.I.*, 118 F. Supp. 3d 784, 800 (E.D. Pa. 2015).  As to Exemption 7(a) the Court concluded:

---

[3] Exemption 7(E) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

> Although Exemption 7(A) may be applied categorically, the FBI has not yet proven that it may be applied categorically to the materials at issue in this case. Here, in light of the fact that Mr. Corley has already stood trial based on evidence likely contained in the FBI's files, Exemption 7(A) is not available to bar the production of all non-public-source material. Rather, the FBI should justify the applicability of Exemption 7(A) (and/or any other claimed FOIA exemption) to each document that it intends to withhold by demonstrating that the protectable information in the document is not already part of the public domain by virtue of use at Mr. Corley's trial.

*Id.* The Court ordered the FBI to "either release the responsive materials to Ms. Johnson or provide the Court with supplemental affidavits or declarations justifying its decision to withhold responsive materials." *Id.*

Thereafter, the FBI – in coordination with the United States Attorney's Office for the Northern District of Indiana – provided Ms. Johnson with unredacted copies of the entire contents of the discovery file from Mr. Corley's criminal case (the "Discovery File").  The Discovery File contained 4,045 pages of documents.  Having received only those documents which originated in the United States Attorney's Office for the Northern District of Indiana, Ms. Johnson filed a Renewed Motion for Summary Judgment as to her initial FOIA request.  Likewise, the FBI filed a Renewed Motion for Summary Judgment which included a Supplemental Declaration of David M. Hardy ("Second Hardy Declaration").

## II.    LEGAL STANDARD

The FOIA mandates broad disclosure of government records to the public, subject to nine enumerated exemptions.  *See* 5 U.S.C. § 552(b); *CIA v. Sims*, 471 U.S. 159, 166 (1985).  The purpose of the FOIA is "to facilitate public access to Government documents," and its "dominant objective" is "disclosure, not secrecy."  *Sheet Metal Workers Int'l Ass'n, Local Union No. 19 v. U.S. Dep't of Veterans Affairs*, 135 F.3d 891, 897 (3d Cir. 1998).  In light of the FOIA's broad policy of disclosure, the Supreme Court has "consistently stated that FOIA exemptions are to be

4

narrowly construed." *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988).  Under the FOIA,

"the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B); *see also U.S. Dep't

of State v. Ray*, 502 U.S. 164, 173 (1991) ("[T]he strong presumption in favor of disclosure

places the burden on the agency to justify the withholding of any requested documents").  The

district court reviews *de novo* the agency's use of a FOIA exemption to withhold documents.

*See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755

(1989).

    An agency meets its burden under the FOIA when it submits a "reasonably detailed

affidavit" describing the method it used to search for responsive materials, *Roman v. Dep't of the

Air Force*, 952 F. Supp. 2d 166, 173 (D.D.C. 2013), and "describing the material withheld and

detailing why it fits within the claimed exemption." *McDonnell v. United States*, 4 F.3d 1227,

1241 (3d Cir. 1993); *Lame v. U.S. Dep't of Justice*, 654 F.2d 917, 928 (3d Cir. 1981) (noting that

the district court "should have had an explanation by the FBI of why in each case disclosure

would result in embarrassment or harassment either to the individual interviewed or to third

parties").  Under Third Circuit Court of Appeals precedent, the affidavit must "provide the

'connective tissue' between the document, the deletion, the exemption and the explanation."

*Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1051 (3d Cir. 1995).

    Even when a document contains portions of content which validly may be withheld

pursuant to an exemption, "[a]ny reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt. . . ."  5 U.S.C.

§ 552(b).  In other words, "[a]n 'agency cannot justify withholding an entire document simply by

showing that it contains some exempt material.'  Rather, the agency must demonstrate that all

reasonably segregable, nonexempt information was released." *Abdelfattah v. U.S. Dep't of*

*Homeland Sec.*, 488 F.3d 178, 186 (3d Cir. 2007) (internal citations omitted) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).  Conclusory statements to the effect that "all reasonably segregable information has been released" will not satisfy the agency's burden.  *Sciacca v. Fed. Bureau of Investigation*, 23 F. Supp. 3d 17, 26 (D.D.C. 2014).

It is also generally insufficient for the agency to simply cite categorical codes in connection with each withheld document, and then provide a generic explanation of what the codes signify.  *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 223-34 (D.C. Cir. 1987) ("A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information . . . Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate" (emphasis in original)).  However, a detailed index summarizing the withheld documents and the reasons they fall within a FOIA exemption (known as a *Vaughn* index[4]) may be "futile" in cases where "a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains."  *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (citing *Church of Scientology v. IRS*, 792 F.2d 146, 152 (D.C. Cir. 1986)).  For example, an affidavit that explains with reasonable detail why a certain category of records necessarily falls within a FOIA exemption can be sufficient to justify withholding each of those records, without reference to their content.  *See Church of Scientology*, 792 F.2d at 152.  Thus, "[w]hile the use of the categorical method does not *per se* render a *Vaughn* index inadequate, an agency using justification codes must also include specific factual information concerning the

_____

[4] *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

documents withheld and correlate the claimed exemption to the withheld documents." *Davin*, 60 F.3d at 1051.

### III.   DISCUSSION

A thorough description and analysis of the parties' initial arguments in this dispute regarding the various claimed exemptions can be found in the Court's previous memorandum opinion. *See Johnson*, 118 F. Supp. 3d at 791-800.  For present purposes, then, the Court will focus on the arguments asserted by the parties in their renewed motions.

The exemption that the FBI chiefly relies on, Exemption 7(A), permits an agency to withhold records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 522(b)(7)(A).  "To fit within Exemption 7(A), the government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm."  *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir. 1995) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)).

The Court previously ruled that when "there is a pending § 2255 motion and the movant is seeking a new trial, the new trial constitutes a prospective enforcement proceeding that may implicate Exemption 7(A)."  *Johnson*, 118 F. Supp. 3d at 792-93.  Shifting the analysis to the second element, the Court previously summarized the FBI's arguments:

> The Hardy Declaration claims that the release of information would allow for (a) the "identification of individuals, sources of information, witnesses, potential witnesses who possess information relative to the investigation, FBI/other law enforcement personnel, i.e., local, state and federal, and individuals otherwise associated with the investigation who could then be targeted for potential intimidation and/or physical harm," (b) the improper use of information "to counteract evidence developed by investigators, alter or destroy potential

evidence and/or create false evidence," and (c) the improper use of information "to uncover the government's legal strategy."

*Id.* at 793 (quoting Hardy Decl. ¶ 42).  The FBI again relies on these arguments in its renewed motion.

The FBI also argues, through its renewed motion and the Second Hardy Declaration, that the Court's previous concerns that the withheld documents might be part of the public record, and therefore not subject to any exemptions, are now resolved because Ms. Johnson has a complete and unredacted copy of the Discovery File.  Recognizing that the Discovery File contained fewer documents than the FBI had initially characterized as responsive to Ms. Johnson's request, the FBI asserts that there is no practical way to determine whether certain documents in the FBI's investigative file were disclosed during Mr. Corley's trial.  Furthermore, the FBI claims that cross-checking the two sets of documents – the Discovery File and the FBI's investigative file – "would be a nearly impossible exercise and not reasonably calculated to identify segregable records within the file that have not already been produced and are not the subject of a valid FOIA exemption."  Def.'s Br. 13.  The FBI concludes that Ms. Johnson has actually been given more than she has bargained for, as she is the "beneficiary of an overlapping segregability review and production from two components of the Department of Justice, notwithstanding the fact that the underlying FOIA request was made only to the FBI."  *Id.* Notably, however, the Second Hardy Declaration does not provide specific and detailed descriptions of the withheld documents and their connections to the various claimed exemptions, but rather focuses on the supposed burden for the agency associated with identifying documents in the FBI investigative file which have been previously disclosed or which contain information that has been previously disclosed.

In response to the FBI's argument regarding the potential harms that would result from the release of the documents in its file, Ms. Johnson posits that those arguments are not credible when one considers the fact that the same Discovery File that was recently turned over to Ms. Johnson was provided to Mr. Corley and his co-defendants more than a decade ago.  Because at least part of the FBI's file has been a matter of public record since Mr. Corley's trial and none of the FBI's articulated harms have occurred, Ms. Johnson asserts that the FBI's arguments are speculative.  The Court previously resisted similar arguments by Ms. Johnson, concluding that while "there is no specific evidence that Mr. Corley or any specific third party is at all likely to commit any of the bad acts conjured up by the FBI, . . . the disclosure of previously undisclosed information could nevertheless reasonably lead to interference with enforcement proceedings." *Johnson*, 118 F. Supp. 3d at 794.

While Ms. Johnson *might* be correct in her assertion that none of the FBI's articulated harms have occurred regarding the witnesses and evidence that have been part of the public domain since Mr. Corely's trial,[5] such an assertion has no bearing on whether such harms might occur if previously undisclosed witnesses and evidence were to be revealed.  Indeed, Mr. Corely or a third party would presumably be more motivated to attempt to neutralize previously undisclosed evidence, as the evidence that was actually presented at Mr. Corely's previous trial has been preserved on the record.  As a result, whereas any attempts to neutralize evidence already disclosed as part of Mr. Corley's previous trial would be unlikely to pay dividends in the event that Mr. Corley is granted a new trial, one might expect witnesses or evidence that were

---

[5] Ms. Johnson asserts that "none of [the FBI's articulated] harms have occurred in the past decade," Pl.'s Br. 4, but the Court finds it difficult to imagine that anyone could possibly verify such an assertion.  While there does not appear to be any affirmative evidence contrary to such an assertion, and the Court in no way infers that such acts have occurred, it would be nearly impossible to guarantee that neither Mr. Corley nor any third party has "counteract[ed] evidence developed by investigators, alter[ed] or destroy[ed] potential evidence and/or create[d] false evidence."

not disclosed during the first trial to be the target of any of the FBI's suggested nefarious schemes.  As was the case when the Court decided the parties' initial motions for summary judgment, "the disclosure of previously undisclosed information could . . . reasonably lead to interference with enforcement proceedings."  Consequently, Exemption 7(A) is applicable to any previously undisclosed information in the FBI's investigative file.

However, as was the case when the Court decided the initial motions for summary judgment, such a gateway consideration is not dispositive in this case.

Ms. Johnson argues that even if Exemption 7(A) applies to some documents in the FBI's investigative file, the FBI has failed to comply with the Court's previous order and accompanying memorandum opinion, which instructed the FBI to provide more detailed descriptions of the materials and information in its file that were not made part of the public record at trial or produced in discovery.  Essentially, Ms. Johnson claims that she has been left in the same position she was in before making the FOIA request.  Ms. Johnson asserts that the Discovery File was turned over to Mr. Corley's current counsel years ago.  Because the FBI is the only party with access to both sets of documents, the FBI alone is in the position to cross-check the two sets of documents.  Ms. Johnson argues that simply ensuring that she possesses all documents from the FBI's file that directly overlap with the Discovery File does not necessarily justify withholding all documents which do not directly overlap with those in the Discovery File. Because the Second Hardy Declaration fails to specifically describe the withheld documents and their relation to the claimed exemptions, Ms. Johnson asserts that the Court is in the same speculative position as it was prior to the filing of the FBI's renewed motion.  The Court agrees.

Ultimately, the FBI attempts to classify the documents responsive to Ms. Johnson's FOIA request neatly into two categories – (1) documents that were disclosed during Mr. Corley's trial,

which are part of the Discovery File and now in Ms. Johnson's possession, or (2) documents that were not disclosed at Mr. Corley's trial, which are necessarily not part of the public record and are therefore validly withheld under the various claimed exemptions.  The Court, however, foresees a third category of documents – documents that were not disclosed at Mr. Corley's trial and were not included in the Discovery File, but have lost the "connective tissue" between the document and the claimed exemptions due to the information that *was* disclosed through discovery and during Mr. Corley's trial.  For example, a document which contains the identity of a confidential informant, thus arguably bringing the document within exemptions 7(A) and 7(D),[6] may very well have lost any valid connection to those exemptions if the confidential informant testified at Mr. Corley's trial.  Assuming that the identity of the confidential informant was the only basis for withholding such a document, the FBI would have no basis for doing so now because the informant's identity was revealed at trial.  While such a document may only be hypothetical, the Court is not as willing as the FBI to rule out the possibility of the existence of documents which were not disclosed in the Discovery File but have lost their connections to the asserted exemptions due to what was disclosed through discovery and at Mr. Corley's trial.

Additionally, the FBI has failed to provide more than conclusory statements regarding its burden to release all reasonably segregable nonexempt portions of the documents in its possession.  As Ms. Johnson points out, the FBI is the sole party in possession of both the Discovery File and its own investigative file.  Consequently, the FBI is the only party capable of comparing the two sets of documents and determining whether portions of its files are segregable

---

[6] Exemption 7(D) protects "records or information compiled for law enforcement purposes" but only to the extent that disclosure "could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

11

and nonexempt.  In this instance, the agency asks that the Court "listen to reason" by listening only to what the agency has to say on the matter.  The assertions in the Second Hardy Declaration that the task of comparing the two sets of documents would be unduly burdensome do not justify the FBI's failure to compile a *Vaughn* index with particular details connecting each withheld document to the claimed exemptions as well as sufficient detail to allow the Court to determine whether all segregable nonexempt portions have been disclosed.  *See Vaughn*, 484 F.2d at 828 (specifically recognizing that "[t]he procedural requirements we have spelled out herein may impose a substantial burden on an agency seeking to avoid disclosure").

Without access to the documents in the FBI's file, and without a detailed description of those documents and their various connections to the claimed exemptions, the Court is left in the same position as before the parties filed their renewed motions for summary judgment.  Because the FBI has not satisfied its burden of sustaining its action, the Court will deny the FBI's Renewed Motion for Summary Judgment.  While the Court will grant Ms. Johnson's Renewed Motion for Summary Judgment, the Court recognizes that certain documents responsive to Ms. Johnson's FOIA request might very well contain previously undisclosed information and may be subject to various exemptions.  Consequently, the Court will limit disclosure of the requested documents to only Ms. Johnson's counsel.  After reviewing the documents, counsel may propose a schedule to the Court for the disclosure of documents to others, including Ms. Johnson.  The FBI will then have the opportunity to submit specific objections to the proposed release schedule.

**IV.**     **CONCLUSION**

For the foregoing reasons, the Court will grant Ms. Johnson's Renewed Motion for

Summary Judgment as provided above and deny the FBI's Renewed Motion for Summary

Judgment.


BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

13